1

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION


UNITED STATES OF AMERICA,

        Plaintiff,

  v.                        CASE NO:  1:09-CR-311

KEITH NICKERSON,

        Defendant.
_____/

* * * *

SENTENCING HEARING

* * * *


BEFORE:   THE HONORABLE PAUL L. MALONEY
           United States District Judge
           Kalamazoo, Michigan
           April 19, 2010

APPEARANCES:

APPEARING ON BEHALF OF THE PLAINTIFF:

     TIMOTHY P. VERHEY
     Assistant United States Attorney
     P.O. Box 208
     Grand Rapids, Michigan  49501-0208

APPEARING ON BEHALF OF THE DEFENDANT:

     CRAIG A. FREDERICK
     3330 Grand Ridge Drive, N.E.
     Grand Rapids, Michigan  49525


KATHLEEN S. THOMAS, U.S. District Court Reporter
410 West Michigan Avenue, Kalamazoo, Michigan  49007
(269)385-3050

file:///A|/041910KN.txt

2

Kalamazoo, Michigan

April 19, 2010

at approximately 2:39 p.m.

PROCEEDINGS

THE COURT:  This is 09-311; The United States of America vs. Keith Nickerson.  This matter is before the Court for sentencing.

The Court's file reflects that on December 21, of the year 2009, the defendant pled guilty before this Judge to Count One, armed bank robbery, contrary to 18 U.S. Code 2113(a) and (d).

The Court accepts the plea agreement, and finds the charges pled to adequately reflect the seriousness of the actual offense behavior.

The Court has been advised that there are no objections to the presentence investigation report.

The Court has scored this case under the advisory guidelines at Offense Level 31, Criminal History Category VI, resulting in an advisory guideline range of 188 to 235 months.

The Court recognizes that I have a pending 5K motion to adjudicate.  I also will state for the record that I've had the benefit of the defendant's sentencing memorandum filed by his counsel, the defendant's letter that he sent to me, as well as the letter that I received from the

file:///A|/041910KN.txt (3 of 38) [8/5/2010 12:45:53 PM]

defendant's sister.

Mr. Craig Frederick represents the defendant.  The government is represented by Attorney Timothy VerHey.  The defendant is present in person.

Mr. Frederick, have you had ample opportunity, sir, of reviewing the presentence investigation report with your client?

MR. FREDERICK:  Yes, I have, your Honor.

THE COURT:  Is it true there are no objections to the report?

MR. FREDERICK:  There are no objections to the scoring of the report.  As the Court knows, in my memorandum I've asked for departure or variance, but Mr. Griffis, as much as it pains me to say this, has scored more one correct.

THE COURT:  The guideline scoring is correct?

MR. FREDERICK:  Technically, yes, your Honor.

THE COURT:  Thank you.  Mr. Nickerson, is that correct, sir, you've had ample opportunity of reviewing the presentence report with your lawyer?

THE DEFENDANT:  Yes.

THE COURT:  And are you satisfied with his work and representation of you?

THE DEFENDANT:  Yes, I am.

THE COURT:  Thank you.

KATHLEEN S. THOMAS, U.S. District Court Reporter
410 West Michigan Avenue, Kalamazoo, Michigan  49007
(269)385-3050

Mr. VerHey, do you concur in the scoring, sir?

MR. VERHEY:  I do, your Honor.

THE COURT:  All right.  Thank you.

You are moving third level of acceptance?

MR. VERHEY:  I am, your Honor.

THE COURT:  That motion is granted.  That does not change the advisory guideline range, because the Court anticipated the making of the motion and the Court's granting of it.

Mr. VerHey, allocution on behalf of the government, sir.

MR. VERHEY:  Your Honor, I don't have any comments to add to Mr. Griffis' report, because I find it was very thorough and tells everything the Court should know, as far as I'm concerned.

THE COURT:  Would you like to elaborate at all on the 5K motion?

MR. VERHEY:  Your Honor, I attempted to put in there everything that I was told by the Michigan authorities about that case.  I don't think I left anything out, so I don't, unless you have some questions I could help you with, I don't think I have anything else on that.

THE COURT:  As far as the government knows, the case is still pending?

MR. VERHEY:  Yes.  I talked to the assistant attorney

KATHLEEN S. THOMAS, U.S. District Court Reporter
410 West Michigan Avenue, Kalamazoo, Michigan  49007
(269)385-3050

general working on the case, and I believe trial is scheduled for June.

THE COURT:  Thank you, sir.

All right.  Thank you.

Mr. Frederick, you may proceed as you wish.

MR. FREDERICK:  Thank you, your Honor.

I would like to address just a couple of areas on behalf of Mr. Nickerson before we get to his statement on his own behalf.

First, your Honor, as I note that in the scoring of the presentence report, Mr. Nickerson is scored as a career criminal.  As I've stated to the Court, according to the commentaries and everything, that would be a correct scoring, if you will, because of the way that he was sentenced on his prior conviction.

However, I think the spirit of career criminal, and as I have referred to it as the-- used to be referred to as three strikes you're out sort of provision, in this case, if you have two prior convictions of drugs or violence or any combination thereof, and this becomes your third conviction for that, that makes you a career criminal.

Your Honor, I'm asking the Court to look at the prior convictions that he has contained in around Paragraphs 80, which are all-- those all occurred between December 15,

1997, and December 20, 1997.  In a five-day period of time is when Mr. Nickerson committed all of the predicate offenses necessary to score him as a career criminal.  If you look at the ones that he is really scored as being a career criminal for, that is, assault with intent to do great bodily harm, it was a drive-by shooting and an armed robbery, those two offenses took place one day apart, December 19th, 1997, and December 20th, 1997.  One took place in Mecosta County, one in Kent County.  Effectively, your Honor, if they had taken place both in Mecosta County or Kent County, those would have been cases that would have no doubt been handled together, sentenced together, and he would not be scored as a career criminal, because they would have been on-- the sentencing would have been on the same day.  Just as we see when you look at Mecosta County, there were three charges, and they were all sentenced, handled on the same day, that was an assault great bodily harm, UDAA, or theft of and automobile and home invasion, second, those occurred between December 15, '97 and December 20, '97.  All of those were sentenced on 11/23/98.  They were all given concurrent sentences, and that is--

THE COURT:  Well, they had to be under state law, right?

MR. FREDERICK:  Well, yes.  And what I, you know,

KATHLEEN S. THOMAS, U.S. District Court Reporter
410 West Michigan Avenue, Kalamazoo, Michigan  49007
(269)385-3050

from practicing almost 30 years in the state also, that's what we always do anyhow.  If they are in the same county and they are within a couple of days of each other.

Now--

THE COURT:  That's mandatorily concurrent under state law.

MR. FREDERICK:  They are mandatorily concurrent, although they don't necessarily have to be handled at the same time, same way, and could, if they occurred a year apart, okay, but he wasn't caught for a year, I would still be probably arguing the same thing, because I would be required to, I think, as far as I'm concerned.  But I think in good faith, when all of these occurred within such a short period of time, that he has for a five day period of time, been a criminal, and a severe one.  The only thing that separates-- that makes him a career criminal versus not scoring career criminal, is because they happened in two different counties, otherwise they would have all been handled in the same file, same time, same way, same sentence.  All of these sentences were concurrent, even though they were in different counties, sentenced by different judges on different days, they were all concurrent sentences.

And I think the spirit of the career criminal is that somebody who is caught and convicted, clearly if there is

an intervening arrest and something and you go out and you commit another one, then you're becoming a career criminal, you are doing offenses that warrant this is your third time, and you are out.  We give you a substantially higher.  He really had one group that were all committed within five days, all concurrent.  The only thing that separates this scoring into that area is because they were in different counties and they can't be handled in a group.

I've never had any experience where different counties can-- they don't do that.  In order for it to be handled, he had to go from-- and that's what he did, he confessed to everything and went into one county, was sentenced-- his plea was in February, in Kent County, was sentenced in March, March 18.  If you notice by within a month, he was-- he had pled guilty in Montcalm County and was sentenced about a month later, in May and--

THE COURT:  Mecosta, isn't it?

MR. FREDERICK:  That was in Montcalm on a breaking and entering, and within two months he was transferred to Mecosta, pled guilty in July, and was sentenced in November in that.  It was more of a--  It's more of an administrative difficulty than it is anything else.

And the consequences for being sentenced as a-- with the advisory guidelines, at least of career criminal

KATHLEEN S. THOMAS, U.S. District Court Reporter
410 West Michigan Avenue, Kalamazoo, Michigan  49007
(269)385-3050

versus just his straight scoring, there is a 78 month difference on the bottom end, it's 110 months versus 188, more than a 50 percent increase.  That's not to minimize, and I know, I hope the Court knows I'm not trying to minimize what he did in those others, I'm just trying to say that while he technically does, because the commentaries and the statements do indicate that if they are not all sentenced on the same day, that sort of thing, that you are a-- they are considered separate crimes.  But I think the reality in this is he should not be-- that it over represents his, I want to say, criminal history, but it doesn't really over represent his criminal history, it's the offense variable that goes up so high, because he is a Criminal History Category VI, whether or not he is armed-- or excuse me, whether or not he is career criminal.  The difference is that he goes up to a 34 on the offense variable versus 28.  So while I say that it over represents his criminal history, it's not just that, it over represents the variable.  That is our first request of the Court, if you will, for looking at a different advisory guideline, for departing down into what would be the correct guideline range, which would be 110 months at the bottom end, and I think it was about 137 at the top end, if the Court just scores him as a bank robber, if you will.

KATHLEEN S. THOMAS, U.S. District Court Reporter
410 West Michigan Avenue, Kalamazoo, Michigan  49007
(269)385-3050

Does the Court wish me to continue on or?

THE COURT:  Go ahead.

MR. FREDERICK:  My second area, your Honor, is in substantial assistance.  I thank Mr. VerHey for filing the motion.  From what I have talked to the detective in the case, Mr. Nickerson's cooperation in this is substantial and is at great potential difficulty to him.  He has already testified at preliminary examination.  This is a twelve-year-old murder that he is involved with.

As I stated to the court, I have been told, at least, that there were numerous witnesses, but they couldn't solve the crime because they are quite frankly afraid of the people who are the perpetrators of the crime, and it has taken forever to bring this crime to this point.

I received, shortly after he proffered on this matter, and I was actually on vacation out of state and received the call from the detective that said we have taken him out of the cell that he is in where he was in danger, because he was with the guy who he is testifying against, but she said I think it would be prudent to move him right out of Van Buren, because I think he is in danger if he is in the jail anywhere.  And I'll thank Mr. VerHey.  I've already done that, but I'll thank him right here, because I contacted him from where I was on vacation and he contacted the marshals and they moved him

to Kalamazoo for his safety.

Providing information regarding helping to solve a murder such as this, the Court is obviously left to determine how many levels that should be, and I don't know how else to say it other than probably the number of levels also depends on where you come out on determining my first argument, whether he goes career criminal or whether he doesn't, the percentage that the Court feels he should get as a result of that.

I do note also that Mr. Nickerson, after he was brought back on this charge the second time, if the Court will recall, he had this case, the government dismissed against him and then reindicted, shortly after coming back he also met with and proffered to Agent Burns regarding this and any knowledge that he had regarding this whole series of bank robberies that they have been investigating regarding these individuals.  And apparently Mr. VerHey does not feel that that rose to the level of substantial assistance, but I think the Court should know that he has also done his best on this matter seeing to it that the government knew about everything, and probably played, I would think he even played a part in having Mr. Ronald Johnson ended up pleading on this particular case.  If the Court remembers, both of them were prepared to go to trial on this matter, but Mr. Nickerson actually gave all the

information he had, and it became apparent then, I think, to Mr. Johnson that it was probably not in his best interests also.

As far as any variance, your Honor, and that would be the third area that I would address. It's unfortunate that the Court doesn't really get a chance to know an individual who sits here. And I know that I'm paid to often stand up in front of the Court and say good things about people who I represent. And I have not appeared that often in front of this Court, so I want the Court to understand that what I say in this case, more than most, actually comes from the heart. I would not hesitate to have Mr. Nickerson live in my neighborhood. I know what his record is. Mr. Nickerson, if you got to know him, is an-- actually a gentleman unlike few that I've had an opportunity to represent. He's only met with Mr. Griffis, and Mr. Griffis was talking to him like I don't understand you, I mean he is a bright, articulate man who really, if you look at his record, has this, what I say, couple of days of really bad followed by significant incarceration, getting out, helping on an armed robbery, and nothing after that. He has been given opportunities to become involved in the rest of these armed robberies that were in a string here, but he really isn't-- he really doesn't have that mindset.

KATHLEEN S. THOMAS, U.S. District Court Reporter
410 West Michigan Avenue, Kalamazoo, Michigan  49007
(269)385-3050

So when the Court looks at these various factors in fashioning a sentence that's not greater than is necessary, I hope the Court will look at Keith Nickerson and see what really is necessary for the protection of society and deterrence.

Mr. Nickerson, I know that by driving a vehicle to a bank, you are as guilty as the one who goes in, but bear in mind that that is what he did.  He didn't go in with guns.  He didn't ever take part in anything beyond this in a string of bank robberies, though talked to about it, and given the opportunity he didn't.  He is not the same type of mindset that we find in many "career criminals" that appear that either I represent or I'm sure the Court has had many appear before you.  He is a real paradox as to who he is.  I know he tried to write a letter to explain that to you, but I don't know if anybody can ever explain the way that he has acted in his life.

He does want an opportunity to try and talk to you some more about that.  So I guess I would say that when you look at each of the variables in the statute, and you consider him, he certainly doesn't need rehabilitation. He has worked--  Keep in mind also this occurred five years ago, this bank robbery, and he has not been involved-- he has been involved in a possession of marijuana, I think, since then, but he has not been

KATHLEEN S. THOMAS, U.S. District Court Reporter
410 West Michigan Avenue, Kalamazoo, Michigan  49007
(269)385-3050

file:///A|/041910KN.txt

involved in a serious offense.

Is he a danger to society?  From what we see here, you could certainly fashion an argument that says yes, but I really don't think he is a danger to society.  He has so many skills, and he uses those.  Employment, a long history of employment, and satisfy good employment actually.  He has a family that supports him.  A significant other that supports him.  Overall, your Honor, I think that if the Court were to get to know Mr. Nickerson, that you would be able to see in fashioning a sentence that is not greater than necessary, that the sentence would be significantly lower than, whether it be the 110 months that I propose is appropriate because of not scoring career criminal or whatever level you find it at.  I think you would be very happy with the individual if the sentence was significantly lower than that.

Thank you, your Honor.

THE COURT:  Thank you, counsel.

Mr. Nickerson, sir, anything you wish to say on your own behalf?

Sir, I want you to know that I've read your letter. But you may proceed as you wish.

THE DEFENDANT:  Thank you for your time.  Okay.  I've been a fool.  I've made many bad choices, one of which has brought me before you here today.  I'm truly sorry for my

KATHLEEN S. THOMAS, U.S. District Court Reporter
410 West Michigan Avenue, Kalamazoo, Michigan  49007
(269)385-3050

file:///A|/041910KN.txt (15 of 38) [8/5/2010 12:45:53 PM]

actions and the actions of my co-defendants who I assisted in that crime.

I would take back the choices I made that day without question for the sake of all the lives that are altered, as well as a full measure of respect for law and the order of our society.

Understandably regret and remorse are only two steps along the path of redemption.

Over the past twelve years, I've struggled in my decision making.  Notably in the last four years prior to my arrest, I've made progress; consistent work, stable residence, a fulfilling hobby, volunteer work, an incredible woman to further domesticate me.

I was also given a paternity test since I've been in federal custody, and I am now a father.  His name is Isaiah, and he was born on Christmas Eve.  He is my first and my parents first, my grandmother's first great grandchild.  He is history.  I'm very proud of him, although we have yet to meet.

After I helped commit that offense five years ago, I knew there would come a time when I would have to pay my debt to society.  From that day forward, I've been committed to the process of change.  Since that day, I've been offered several opportunities to participate in similar crimes.  Every offer I turned down.  At times I

KATHLEEN S. THOMAS, U.S. District Court Reporter
410 West Michigan Avenue, Kalamazoo, Michigan  49007
(269)385-3050

was blessed with enough courage to warn others to not get involved. I drew my line in the sand, and I worked towards changing who I became that day. I'm not perfect, and my journey from then until now hasn't been either. The transformation did not happen overnight.

Before you today is a man improved and prepared not only to reintegrate, but to excel in society and to succeed in every role that a man is responsible for as a productive American citizen.

We understand that there are a great number of factors to consider when sentencing. And true, this is not an exact science. If it were, there would be no need for PSIs, deliberation, or virtually any legal representation once a plea is entered. Sentencing can never be done by a machine. We as human beings have been wise enough to know that this process should be done with compassion and with great attention to detail, for there are many many lives at stake with every decision.

My lawyer and I have discussed the differences between the letter and the spirit of a career criminal on many occasions. He argues that the close proximity of my previous offenses could allow them to be considered as one act. I am not a career criminal. If not for the letter that my lawyer suggested, then the spirit. When the career offender policy was created, it was designed to

maximize the punishment for people who made crime their professions, who sought no other way of life, and broke the law again and again and again.  The spirit of the policy, what it was created for, the kind of individual that it was designed for, is not who I am.

Career criminals don't respect the fact that it's not okay to commit crime on any level.  To my fault, of course, it's not okay to rob a bank.  But it's not okay to drive 90 miles an hour on the highway because you're running late either.  It's not okay to casually use cocaine or to redistribute prescription drugs.  It's not okay to lie on taxes or park in handicapped only spot if you are not physically disabled.  Either you are a person who tries to respect the rules or you're a person who couldn't care less.  And for me to spend the remaining years of my life after the offense without any authoritative influence trying to reprogram my thoughts, changing myself for the better, moving towards righteousness, does not embody the mind nor behaviors of a career criminal.

That incredible woman I mentioned earlier is still standing beside me.  I've also been blessed with the love and support of my entire family and the birth of Isaiah.  Collectively we humbly ask for mercy.  But no matter what your decision, I absolutely will not let myself, you, or

my community down again.

Thank you.

THE COURT:  Thank you, Mr. Nickerson.

Mr. VerHey, do you wish to respond to Mr. Frederick's argument as it relates to the application of the career offender guideline?

MR. VERHEY:  Your Honor, I can respond only by saying that I agree with Mr. Frederick.  First of all, in that it was correctly scored under the guidelines, there is no getting around that.  But I can also see where he is coming from in terms of the timing being a crucial determinative factor in how he got scored as a career offender.  It's a judgment call for the Court under a variance decision, and frankly, I think you would be supported either way.  It's just however you decide the criminal history strikes you as to whether it's too high in terms of how it came about and how it scored or whether it's appropriately scored.  That's all I can say.

THE COURT:  Thank you, sir.

Mr. Frederick, anything else, sir?

MR. FREDERICK:  No, your Honor.  Thank you.

THE COURT:  Thank you.

It is the Court's duty to impose a sentence sufficient, but not greater than necessary to comply with the purposes of sentencing set forth in 18 U.S. Code

3553(a).

The Court recognizes the guidelines are advisory to the Court, but I have taken the guidelines into account as an initial benchmark or starting point when sentencing in this case.  I recognize I must make an individualized assessment based on the facts presented.  The guideline range is one of the array of factors warranting consideration.

I also fully recognize my discretion in determining an appropriate sentence as recognized by the United States Supreme Court in its decisions in Booker, Kimbrough, Rita, Gall, Spears, and the recent Sixth Circuit case of Herrera-Zuniga.

I have considered all of the defendant's arguments in support of the request for a lower sentence.

The 3553 factors are the nature and circumstances of the offense, and the history and characteristics of the defendant.  The sentence must reflect the seriousness of the offense; promote respect for law; provide just punishment for the offense; afford adequate deterrence to criminal conduct; protect the public from further crimes of the defendant; provide the defendant with needed medical, educational, and/or correctional treatment; the need to avoid unwarranted sentencing disparity among similarly situated defendants; any guideline policy

KATHLEEN S. THOMAS, U.S. District Court Reporter
410 West Michigan Avenue, Kalamazoo, Michigan  49007
(269)385-3050

statements that pertain; and the kinds of sentences available to the Court.

First, I recognize the government has filed a 5K motion as it relates to the defendant's cooperation in the prosecution of a still pending unsolved homicide, which is pending in state circuit court.  The defendant has testified at a preliminary examination, and according to the 5K motion filed by the government, was an important witness in support of the prosecution.  As far as the 5K motion is concerned, the Court intends to grant it.  I have considered only the defendant's cooperation to date, as I am required to do.  I have not factored in any future cooperation the defendant may lend to the prosecution of others.

In addition, the defendant, without contradiction from the government, indicates that he was cooperative in the prosecution of his co-defendants.

Mr. VerHey, I'll give you one last shot to say otherwise, if you don't believe that's accurate.

MR. VERHEY:  Your Honor, I think the defendant's decision to plead guilty could have played a role in at least Ronald Lavar Johnson's decision to plead guilty.  We can never know for sure.

THE COURT:  Do you consider Ronald Johnson the lead defendant in this case or is it a horse race between he

and Solomon?

MR. VERHEY:  I think it would be a horse race.  And Ronald Johnson also had the DNA linking him to the clothing, so that's what makes it difficult.

THE COURT:  Thank you, sir.

But the Court is also mindful of the defendant's proffer in this case that is before the Court today.  I consider the defendant's decision to cooperate with the government a positive one.  It reflects well on the defendant, and it clearly shows, in the Court's judgment, that Mr. Nickerson, while he has a significant criminal history, has made a decision to support society by supporting a prosecution of another person who-- or persons who were engaged in a homicide, and so I intend to grant the 5K motion that is before me.

The 3553 factors are ones that the Court has considered.  I have a request for a variance from the defendant.  Mr. Frederick points out that the prior offenses, which are the substance of Mr. Nickerson's-- the determination of Mr. Nickerson as a career offender, occurred in a five-day crime spree in late 1997.  The crime spree was one which included a drive-by shooting and an armed robbery in different counties in the State of Michigan.  These are not garden variety offenses by any stretch of the imagination.  During this crime spree,

Mr. Nickerson was a major threat to the public.  I accept his word, because it's clear from his letter that he sent me, that he has made a determination that he does not want to engage in that sort of behavior before.  I believe him when he says that he regrets his actions, that he is remorseful, and that he is ashamed of his conduct.

As Mr. Frederick appropriately pointed out, being an aider and abettor to these offenses, is just the same as being a principal.  You can't be half-in on an armed bank robbery.  In this case, Mr. Nickerson was the get-away driver, playing a critical role in the execution of this robbery.  So to the extent that there is a request that I vary because of what I think was described in the defendant's pleading, limited involvement, I reject that. I believe that Mr. Nickerson was a critical player in this robbery.  The law provides that he is just as guilty as his co-defendants.  I don't consider his involvement as being a wheel man for this robbery to be limited involvement as asserted by his lawyer.

As far as the career offender argument is concerned, it is a good argument, and one that the Court has not had the opportunity to view before because of the nature of Mr. Nickerson's prior offenses.

The aspect of the career offender guideline that is relevant here is the assignment of a level-- an offense

level to Mr. Nickerson's advisory scoring as opposed to him being placed in Criminal History Category VI.  Mr. Nickerson would be placed in career offender category as a career history score of VI regardless of whether he was so classified.  That was an awkward sentence, and I'll rephrase it.  The career offender guideline calls for Criminal History Category VI.  Mr. Nickerson would have been Career History Category VI, even without the application of the career offender guideline.  What is relevant to an assessment of whether the career offender guideline overstates the seriousness of Mr. Nickerson's prior behavior is the application of the career offender guideline in the levels that are assigned to his offense as opposed to him moving to Career History Category VII, so to that extent, I think the defense has an argument, because indeed, it is a six level difference between Paragraph 73 and the application of the career offender guideline in Paragraph 76 jumping from Level 25 to Level 31.  So I believe the defendant is entitled to some consideration for that fact, and I'm going to grant the request for a variance on that ground.

It's also clear to me that Mr. Nickerson has engaged in rehabilitative steps since he committed this offense, and he is to be given some consideration in that regard also.  He has written me a letter, which is very

KATHLEEN S. THOMAS, U.S. District Court Reporter
410 West Michigan Avenue, Kalamazoo, Michigan  49007
(269)385-3050

impressive.  It is totally at odds with his conduct, which cannot be described as anything less than very serious. Obviously, armed bank robbery is a 25 year statutory maximum under federal law.  The commission of this crime was indeed very serious, but the letter is very impressive in terms of its insight into what he's done and his goals for the future.

The specific deterrence of Mr. Nickerson is still attendant to this case, in the Court's judgment, but it's not attendant in the same manner that I would normally consider to be an individual who is a Criminal History Category VI, because I think Mr. Nickerson has got some very strong potential for rehabilitation, and also very strong potential to be a law abiding citizen, not only in terms of not committing new crimes, but also in terms of being a positive force for others.

He has the support of his family, which the Court also has considered.  And he does, in the Court's judgment, have the capacity to be a law abiding citizen in the future.

Just punishment for the seriousness of the offense also must be attendant to the Court's calculation here. The sentence also must promote respect for law, and as I've said before, reflect the seriousness of the offense.

The government has suggested that the Court move down

three levels for his substantial assistance to the state attorney general's office.  Given the fact that Mr. Nickerson decided to cooperate, in light of potential harm to himself and to his family, I think the three level 5K motion is appropriate based on his live testimony at the state preliminary examination.  As I've said before, I have only considered Mr. Nickerson's cooperation to date. It does not contemplate any further potential of a Rule 35 as I adjudicate this case today.

Accordingly, I believe that with a three level reduction, I ordinarily, without the 5K consideration, would have sentenced Mr. Nickerson, in light of his prior record, at least in the middle of the attendant guideline range, which was-- which would have been approximately 212 months, but the-- and a three level departure from the low end of the 188 guideline range would have been 140 months.  I believe a sentence of a level that gives credit to Mr. Nickerson's cooperation, as well as the fact that at the margin his career offender guideline does over score him.  Accordingly, I intend to depart downward in a manner consistent with his 5K cooperation, as well as giving him a modest decrease for the fact that the career guideline overstates the seriousness of his particular situation.

Accordingly, it's the judgment of the Court that the

KATHLEEN S. THOMAS, U.S. District Court Reporter
410 West Michigan Avenue, Kalamazoo, Michigan  49007
(269)385-3050

defendant be committed to the custody of the Bureau of Prisons for a period of 128 months.

Upon release from imprisonment, the defendant shall be placed on supervised release for a term of five years. Within 72 hours of release from custody of the Bureau of Prisons, the defendant shall report in person to the probation office in the district to which he is released.

While on supervised release, the defendant shall comply with the mandatory and standard conditions of supervision, including DNA collection, drug testing.  He is not to possess any firearms, destructive devices or dangerous weapons.

Additionally, the defendant shall comply with the following special conditions of supervision:

Participate in a program of testing and treatment for substance abuse as directed by his probation officer, until such time as the defendant is released from the program by his probation officer, and shall pay at least a portion of the cost according to his ability to pay, as determined by his probation officer.

The defendant shall refrain from all use of alcoholic beverages, participate in a program of mental health treatment, as directed by his probation officer, until such time as the defendant is released from the program by his probation officer, and shall pay at least a portion of

KATHLEEN S. THOMAS, U.S. District Court Reporter
410 West Michigan Avenue, Kalamazoo, Michigan  49007
(269)385-3050

the cost, according to his ability to pay, as determined by his probation officer.

The defendant shall provide the probation officer with access to any requested financial information.  He shall not apply for, nor enter into any loan or other credit transaction without the prior approval of his probation officer.

He must maintain legitimate, full-time employment, as approved by his probation officer.

Perform 200 hours of community service, as directed by his probation officer.

The $100 special assessment is ordered due and payable immediately.

Restitution is ordered in the amount of $9,394.91. It's ordered the defendant shall make the restitution in that amount, except no further payment shall be required after the sum of amounts actually paid by all defendants has fully compensated the victim for the injury.  In other words, it's a joint and several duty of the defendant and his co-defendants.

Restitution payments shall be made to the United States District Court Clerk for distribution to the victim.

The defendant does not have the ability to pay a fine.  Accordingly, the fine is waived in this case.  The

defendant shall pay minimum quarterly installments of $25 based on IFRP participation, or minimum monthly installments of $20 based on UNICOR earnings during the period of incarceration to commence 60 days after the date of the judgment in this case.  Any balance due upon commencement of supervision, shall be paid during the term of supervision in minimal monthly installments of $200 to commence 60 days after release from imprisonment.

The defendant shall apply all monies received from income tax refunds, lottery winnings, judgements and any other anticipated or unexpected financial gains to any outstanding court-ordered financial obligation.

The Court finds the defendant does not have the ability to pay interest on the restitution.  Accordingly, the interest is waived in this case.

Mr. Frederick, any recommendations to the Bureau of Prisons that you would like, sir?

MR. FREDERICK:  Your Honor, my client would like a couple of things; number one, is of course, since he's got his family here and everything, he would like to be incarcerated as close as possible to his home.  Milan would be great, but I know the Court's limited ability to do anything in that regard.

Two, he would like the recommendation for any type of programs that he can get within the prison system.  He is

KATHLEEN S. THOMAS, U.S. District Court Reporter
410 West Michigan Avenue, Kalamazoo, Michigan  49007
(269)385-3050

an educated man, but loves to learn.  He thinks he can actually be of assistance while he is in there helping others.  But he would like any kind of vocational or any kind of programs that the Court can get him in.  As I say, he, as the Court knows, has got a good mind.

THE COURT:  All right.  I'll certainly recommend educational and/or vocational treatment.

Does Mr. Nickerson have any vocational training particular in mind?  Sometimes they like me to put it on the J and C exactly what he is interested in.

MR. FREDERICK:  His real interest is journalistic writings, I don't know if there is anything in that area.

THE COURT:  We will put it in there and see what they do with it.

MR. FREDERICK:  As one other-- maybe I'm ahead of myself here--

THE COURT:  Go ahead.

MR. FREDERICK:  One other thing I would just like to point out to the Court.  I've spoken to Mr. Griffis, and I think this will all work out, but just so the Court is aware, and I might need to contact--  Today represents one year my client has actually been involved in this case.  I believe he was arrested on April 20, one year ago, but there was a time in September that the prior bank robbery charge was dismissed.  We were prepared to go to trial,

and the government dismissed it in front of the Court, for about a month.  He was just housed at the state on a parole violation, which was actually all related to this case.  He was then reindicted on this case, and all I want to make sure is that he gets credit.  I don't know that there is any way, but I don't know how the Bureau of Prisons figures out credit, I don't know if anybody does, but I want to make sure that because that prior case was dismissed and everything, that he does get the full credit.  That may not be anything you can do at this time, but I'm bringing this up because if he doesn't get it, maybe I can make a motion and get some kind of amended judgment or I don't know what the Court's--

THE COURT:  Refresh my memory.  There was the issue of the DNA testing, and one of the defendants-- I'll confess, I don't remember, did not want to accede to any adjournment.

MR. FREDERICK:  We did not want to, and I don't think either Mr. Johnson or-- I know each time that they asked for adjournment, I objected.

THE COURT:  Right.

MR. FREDERICK:  Okay.

THE COURT:  And I think I made a record at the time that that was going to stop the clock on the case with your client, and your position was your position, and I

file:///A|/041910KN.txt

appreciate that.

I guess what I'm saying is the Bureau of Prisons will calculate the time, having given every indication in terms of a warning that we were about to enter into dead time, you are not going to get relief from me for that, is all I'm saying.  In other words, the Bureau of Prisons will give you what you're-- what Mr. Nickerson is entitled to, but having made a record at the time that we, if I dismissed the-- if I didn't grant the adjournment, and if I recall correctly, the government told us that they were going to dismiss, I warned your client that that was dead time.  So--

MR. FREDERICK:  But was the dead time the time that he did not-- that he was then in state care or would that also include the time that he was actually held for this robbery?

THE COURT:  Well, that would depend on how we got control of Mr. Nickerson.  And it's a matter of who goes first.  Did we writ him?

MR. FREDERICK:  No, he was arrested one year ago today on this charge.

THE COURT:  By federal authorities?

MR. FREDERICK:  By federal authorities.

THE COURT:  Then we are first in line, so I believe the way it will work, and this is an area understood by

file:///A|/041910KN.txt (32 of 38) [8/5/2010 12:45:53 PM]

far fewer than those who read the rules-- and Mr. Griffis is on his feet, and I'll call on Mr. Griffis so he may be able to enlighten us.

PROBATION OFFICER GRIFFIS:  No, your Honor, Mr. Frederick brought this up to me, so I made a phone call to the Bureau of Prisons, and in Paragraph 17 of the presentence report, we have him being taken into custody August 20th, he will receive custody from that.

MR. FREDERICK:  April 20th?

PROBATION OFFICER GRIFFIS:  April 20, 2009, and then on September 9th, the case was dismissed and then he went into state custody.  So he will not get credit from that time until charges were brought again on him federally in October, and then he's been in continuous custody from that time until now, and he will receive custody with us until that time.  And I don't know about the parole hold. I was told from the parole officer that there aren't any-- or possibly would be pending charges depending on the sentencing here, which 99.9 percent of the time they go away.  So that is what I was told by the BOP representative.

THE COURT:  All right.  Did we writ him out of state custody the second time?

PROBATION OFFICER GRIFFIS:  I don't believe we did. I think he was sitting in jail on the state parole hold at

that time, and then charges were filed again in October.

THE COURT:  Because that's a potential nuance.  I guess what I'm saying is that September to October time.

MR. FREDERICK:  Yes.

THE COURT:  My position is you were on notice, so don't look to relief from the Court on that issue.

Now, there is a possibility that the Bureau of Prisons will consider the reindictment to be second in. In other words, we got him from the state after that one month period, and they are not going to give him credit from October, if that is the way they-- I think, I think that's right.  That's possible anyway.  Because if he went into-- if the only reason he was being held was state custody, the federal authorities didn't have any hold on him at that point, after September the 9th, until they reindicted him, it could be that the Bureau of Prisons will consider the time from when he was reindicted until now as being dead time.  Possibly.  I don't know.  But that's possible.  But if that is the case, then file a motion on that.

MR. FREDERICK:  Okay.

THE COURT:  Okay.

MR. FREDERICK:  Okay.  Thank you.  I appreciate it.

THE COURT:  Yes.  I mean because the adjournment of-- the adjournment or the time from October ought to be

KATHLEEN S. THOMAS, U.S. District Court Reporter
410 West Michigan Avenue, Kalamazoo, Michigan  49007
(269)385-3050

included, as far as I'm concerned.  But again, the Bureau

of Prisons does all of that, and if based on their

calculations you think there's been something unfair,

then--

MR. FREDERICK:  I'll file a motion.

THE COURT:  Then I'll get the motion.

MR. FREDERICK:  Thank you, your Honor.

THE COURT:  Okay.  Mr. Frederick, are you satisfied

that I've considered all of your arguments, sir?

MR. FREDERICK:  Yes, I am, your Honor.  Thank you.

THE COURT:  All right.  Thank you.

Did I ask you whether there are any legal objections

to the sentence?

MR. FREDERICK:  You didn't ask me, but I don't have

any.

THE COURT:  All right.  Thank you.

Mr. VerHey, any legal objections to the sentence

imposed?

MR. VERHEY:  No, your Honor.

THE COURT:  Any counts to be dismissed?

MR. VERHEY:  Count Two we would ask to be dismissed.

THE COURT:  All right.  Count Two is dismissed on

motion of the government.

Mr. Nickerson, I advise you, sir, you can appeal your

conviction if you believe that your guilty plea was

KATHLEEN S. THOMAS, U.S. District Court Reporter
410 West Michigan Avenue, Kalamazoo, Michigan  49007
(269)385-3050

somehow unlawful or involuntary, or if there is some other fundamental defect in the proceeding not waived by your guilty plea.

You also have a statutory right to appeal your sentence under certain circumstances, particularly if you think the sentence is contrary to law.  However, a defendant may waive those rights as part of a plea agreement, and you've entered into a plea agreement, which waives some or all of your rights to appeal the sentence itself.  Such waivers are generally enforceable, but if you believe that your waiver unenforceable, you can present that argument to the appellate court.

You have the right to apply for leave to appeal in forma pauperis if you are poor.  If you wish to do so, with a few exceptions, you need to file the documents for which your attorney is acknowledging receipt on your behalf within ten days of the entry of the judgment in this case.  If you file the documents, the Clerk of the Court will prepare and file a notice of appeal upon your request.

Anything further before I remand the defendant?

MR. VERHEY:  Not on behalf of the government, your Honor.

MR. FREDERICK:  No, your Honor.  Thank you.

THE COURT:  Thank you.


KATHLEEN S. THOMAS, U.S. District Court Reporter
410 West Michigan Avenue, Kalamazoo, Michigan  49007
(269)385-3050

Mr. Nickerson, good luck to you, sir.

THE DEFENDANT:  Thank you.

COURT CLERK:  All rise, please.

Court is adjourned.

(At 3:34 p.m., proceedings were concluded.)

KATHLEEN S. THOMAS, U.S. District Court Reporter
410 West Michigan Avenue, Kalamazoo, Michigan  49007
(269)385-3050

REPORTER'S CERTIFICATE


     I, Kathleen S. Thomas, Official Court Reporter for the United States District Court for the Western District of Michigan, appointed pursuant to the provisions of Title 28, United States Code, Section 753, do hereby certify that the foregoing is a true and correct transcript of proceedings had in the within-entitled and numbered cause on the date hereinbefore set forth; and I do further certify that the foregoing transcript has been prepared by me or under my direction.


                    /s/
                    _____
                    Kathleen S. Thomas, CSR-1300, RPR
                    U.S. District Court Reporter
                    410 West Michigan
                    Kalamazoo, Michigan   49007